IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HYBRID PATENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:05-CV-436 |
| - v. - | ) | |
| | ) | The Honorable T. John Ward |
| CHARTER COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

## MOTION TO DISMISS FOR NON-JOINDER
## OR IN THE ALTERNATIVE EITHER TO TRANSFER OR ABATE

_____

Otis W. Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway Suite 500
Tyler, Texas 75703
Tel:  (903) 561-1600
Fax: (903) 581-1070

Bradford P. Lyerla
Kevin D. Hogg
Gregory E. Stanton
MARSHALL GERSTEIN & BORUN, LLP
6300 Sears Tower
Chicago, Illinois 60606-6357
Tel:  (312) 474-6300
Fax: (312) 474-0448

Counsel for Defendant
CHARTER COMMUNICATIONS, INC.

April 28, 2006

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................- 1 -

INTRODUCTION .......................................................................................................- 1 -

STATEMENT OF FACTS ..........................................................................................- 3 -

  **A.**  Nature of the Case ...........................................................................................- 3 -

  **B.**  Arris Claims to Be the Rightful Owner of the Patents in Suit .....................- 4 -

  **C.**  The Prior California Litigation:  Judge Whyte's Order and the Com21 Witnesses.......- 4 -

  **D.**  Hybrid Networks Gave Com21 the Right to Buy the Patents. ......................- 7 -

  **E.**  The Inventors of the Patents-in-Suit.............................................................- 7 -

  **F.**  Prior Invention and Offers for Sale:  The Hybrid Networks and IBM Witnesses .........- 8 -

  **G.**  Non-Party Charter Vendors ........................................................................- 10 -

ARGUMENT ............................................................................................................- 11 -

  1.  Non-Joinder ..................................................................................................- 11 -

  2.  Transfer - First Filed Rule ...........................................................................- 12 -

  3.  Transfer - Convenience ...............................................................................- 13 -

  **A.**  This Action Might Have Been Brought In The Northern District Of California. .........- 14 -

  **B.**  The Convenience Of The Parties And Witnesses,  And The Interest Of Justice, Would Be Served By Transferring This Case To The Northern District Of California. ......................- 14 -

    1.  The Relative Ease of Access to Sources of Proof....................................- 16 -

    2.  The Availability of the Compulsory Process to Secure Witnesses' Attendance.......- 16 -

    3.  The Willing Witnesses' Cost of Attendance ...........................................- 16 -

    4.  Other Practical Problems That Make the Case's Trial Easy, Expeditious, and Inexpensive ....................................................................................................- 16 -

    5.  The Administrative Difficulties Flowing From Court Congestion...........- 17 -

    6.  The Local Interest in Having Local Issues Decided at Home ..................- 17 -

    7.  The Forum's Familiarity With the Governing Law ..................................- 17 -

    8.  The Avoidance of Unnecessary Conflict of Law Problems Involving Foreign Law's Application...................................................................................................- 18 -

  4.  Abatement....................................................................................................- 18 -

CONCLUSION.........................................................................................................- 18 -

# TABLE OF AUTHORITIES

**Cases**

*Com 21, Inc. v. Hybrid Networks, Inc.*, No. C-98-20085 RMW (N.D. Cal. 1999) ................... - 3 -

*Dearing v. Sigma Chem. Co.*, 1 F. Supp.2d 660, 665 (S.D. Tex. 1998) ................................ - 16 -

*In re Horseshoe Entm't*, 33 F.3d 429, 434 (5th Cir. 2003) ...................................... - 16 -

*O2 Micro International Limited v. Monolithic Power Systems, Inc.*, No. 2:04:CV-359 (E.D. Tex. 2006) ................................................................................................ - 13 -

*Purdy v. Munden*, 356 F. Supp.2d 658, 659 (E.D. Tex. 2005) ................................ - 14 -

*Shoemake v. Union Pac. R..R. Co.*, 233 F. Supp.2d 828, 829 (E.D. Tex. 2002) ...................... - 14 -

*Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp.2d 786, 790-91 (S.D. Tex. 2005) ........ - 15 -

*Zoltar Satellite Sys., Inc. v. LG Elec. Mobile Comm., Co.*, 402 F. Supp.2d 731, 734 (E.D. Tex. 2005.) ................................................................................................ - 14 -

**Other Authorities**

U.S. Patent No. 5,586,121 ................................................................................ - 1 -

U.S. Patent No. 5,818,845 ................................................................................ - 1 -

U.S. Patent No. 6,104,727 ................................................................................ - 1 -

U.S. Patent No. Re. 35,774 ................................................................................ - 1 -

**Rules**

28 U.S.C. 1404(a) ........................................................................................ - 2 -

F.R.C.P. 19(b) ........................................................................................ - 2 -

## PRELIMINARY STATEMENT

At the Docket Control Conference on April 4, 2006, the parties advised the Court that on March 31, 2006, Arris International, Inc. ("Arris") filed a lawsuit in the United States Bankruptcy Court for the Northern District of California alleging that it, rather than Hybrid Patents, Inc., is the rightful owner of U.S. Patent No. Re. 35,774; U.S. Patent No. 5,586,121; U.S. Patent No. 5,818,845; and U.S. Patent No. 6,104,727 ("the patents-in-suit").  As they told the Court they would, the parties have conferred, but are unable to agree as to what effect the Arris lawsuit should have on the case pending before this Court.  Consequently, Charter brings this motion.

## INTRODUCTION

The parties necessary to adjudicate this patent infringement case are not present before this Court.  Thus, the possibility of inconsistent judgments looms.  As explained below, a third party – Arris International, Inc. – claims to be the rightful owner of the patents-in-suit and has filed a lawsuit in the Northern District of California Bankruptcy Court ("Bankruptcy Court") against Hybrid Patents (and five other parties who are in the chain of title to the patents-in-suit).  Arris' lawsuit seeks to establish its ownership.  Further, Arris has advised Hybrid Patents that it soon will file a motion for a preliminary injunction in the Bankruptcy Court seeking to prohibit Hybrid Patents from continuing to prosecute the case before this Court.  In view of that conflicting litigation, and the fact that all of the putative owners of the patents are present before the Bankruptcy Court in California, but not here, Charter respectfully moves this Court for an Order dismissing Hybrid's Patent's complaint for non-joinder under F.R.C.P. 19(b).

If the case is not dismissed for non-joinder, then the case should be transferred under the first filed doctrine.  Although Hybrid Patents filed its Complaint in this Court first, Arris' adversary Complaint in the Bankruptcy Court is the first filed case with all of the putative owners of the patent named as parties.  Arris' adversary Complaint is, therefore, the first filed case.

The Court also has the authority to transfer under 28 U.S.C. 1404(a).  All of the statutory factors under §1404(a) favor transfer.  All six inventors reside (according to their last known addresses) in the Northern District of California.  The company for whom they worked during the relevant period—Hybrid Networks, Inc—was last located in the Northern District of California.  Other former officers, directors and employees of Hybrid Networks reside (according to their last known addresses) in the Northern District of California.  Still other non-parties — such as employees of IBM — to whom Hybrid Networks offered to sell the claimed invention as early as June 1990 (thereby raising a substantial question of patent invalidity) reside (according to their last known addresses) in the Northern District of California.  Non-party vendors of equipment which plaintiff accuses of infringement—such as Cisco Systems, Inc.—are located in the Northern District of California.

Most important, one of the companies against which Hybrid Networks asserted three of the four patents involved in this case—Com21, Inc.—is located in the Northern District of California together with its octogenarian chairman—Mr. Paul Baran—who is widely reported to be one of the early pioneers of the very technology claimed in the Patents-in-suit.  Mr. Baran likely was a critical reason why Hybrid Networks settled with Com21 by granting it a license.  More would be known about this settlement and Mr. Baran's involvement—including and especially Mr. Baran's knowledge of potentially invalidating prior art—but for the fact that Hybrid Networks required, as a condition of the settlement, that Com 21 not assist any future defendant in

challenging the validity of the Patents-in-suit.  That agreement is now part of the final order of dismissal entered by Judge Ronald M. Whyte of the United States District Court for the Northern District of California in *Com 21, Inc. v. Hybrid Networks, Inc.*, No. C-98-20085 RMW (N.D. Cal. 1999).  The scope of that order—and its effect on discovery and trial in this case—is unclear and, in all events, likely will be the subject of contested proceedings, presumably before Judge Whyte.

For many of these non-party witnesses, travel to this district is inconvenient.  For some, however, it may be prohibited by Judge Whyte's order, at least until a court adjudicates the issue. Either way, none has any connection with this district.

Nor, for that matter, does any other known witness.  Defendant Charter provides services to a small number of subscribers in this district, but none is expected to be a witness in this case. Plaintiff Hybrid Patents, for its part, neither resides in this district nor does business in this district.

Finally, Charter asks in the alternative that the Court simply abate this case until such time as the California litigation is concluded.  This is the only protective measure apparent to Charter that will protect it against the certain risk of inconsistent judgments.

## STATEMENT OF FACTS

### A.    NATURE OF THE CASE

Plaintiff Hybrid Patents, Inc. ("Hybrid Patents") is a Texas corporation with its principal place of business in Fort Worth, Texas.  (Complaint, Docket No. 1, ¶ 1.)  Hybrid Patents sells neither products nor services.  Rather, Hybrid Patents is engaged in the business of buying rights to technology invented by others and collecting royalties—mostly through litigation or the threat of it.  In this case, Hybrid alleges rights in four patents:  U.S. Patent No. Re. 35,774; U.S. Patent No. 5,586,121; U.S. Patent No. 5,818,845; and U.S. Patent No. 6,104,727 ("the Patents-in-suit").

(*Id.* at ¶¶ 6-7.)  Each relates generally to the transmission of packetized digital information, which is an important feature of the modern Internet.

Defendant Charter Communications, Inc. ("Charter") is a Delaware corporation with its principal place of business in St. Louis, Missouri.  (Answer, Docket No. 5, ¶ 2.)  Charter is a cable television MSO ("Multiple System Operator") and provides cable television and related services to subscribers located in several states.  (Ex. A, Decl. of Michael J. Emmendorfer, ¶ 2.)  One of the services provided to subscribers is high-speed Internet access.  Charter provides this service using equipment (*e.g.,* network equipment and modems) purchased from third parties, such as Cisco Systems, Inc.  (*Id.*, ¶ 3.)

Hybrid Patents asserts that Charter's use of equipment manufactured by third-parties, together with Charter's cable network, infringes one or more claims of the Patents-in-suit.

### B.   ARRIS CLAIMS TO BE THE RIGHTFUL OWNER OF THE PATENTS IN SUIT

On March 31, 2006, Arris filed an Adversary Proceeding in the United States Bankruptcy Court, Northern District of California, San Jose Division, alleging that it, not Hybrid Patents, is the rightful owner of the Patents-in-suit.  Arris' Complaint for Declaratory Relief, Injunctive Relief, Specific Performance, Breach of Contract, Breach of Representation and Warranties, and Indemnification ("Adversary Complaint") is attached (Ex. B.)

In essence, Arris alleges that it has the contractual right to own the patents-in-suit as the successor to Com21, a company that is licensed under the patents-in-suit, as described in the next Section.  Arris' Adversary Complaint was filed in San Jose, California, where Com21 is in a Chapter 7 bankruptcy.

### C.   THE PRIOR CALIFORNIA LITIGATION:  JUDGE WHYTE'S ORDER AND THE COM21 WITNESSES

In 1998, Hybrid Networks, Inc.—the original assignee of the patents-in-suit—sued Com21, a California high-speed modem manufacturer, in the Eastern District of Virginia, alleging infringement of three of the four patents asserted in this case.  (Ex. C, Civil Docket for Case No.: 1:98-cv-00109-LMB, pg. 1.)[1]  Com21 was one of several companies founded by Paul Baran, a computer scientist who is the inventor of packetized data transmission and thus one of the "Grandfathers of the Internet."  (Ex. E, MIT Inventor of the Week Archive, p. 1.)[2]  Com21 was located in the Northern District of California, as were many of its employees who witnessed Com21's activities relating to the high-speed transmission of packetized data.

Judge Brinkema of the Eastern District of Virginia transferred the case to the Northern District of California, after which the action settled with an inexpensive license for Com21.  Little is known about the evidence giving rise to the Com21 settlement because of Judge Whyte's order preventing Com 21—including arguably Mr. Baran—from assisting any future defendant:

---

[1] Hybrid Networks initially asserted U.S. Patent Nos. 5,347,304 ("the '304 patent") and 5,586,121 ("the '121 patent").  (Ex. D, 1/15/99 Stipulation and Order of Dismissal, ¶ 2.)  While that action was pending, however, the Patent Office reissued the '304 patent as U.S. Patent No. Re. 35,774 and issued U.S. Patent No. 5,818,845 ("the '845 patent"), a divisional of the '121 patent. (Complaint, Docket No. 1, p. 1 of Exhibits B and C.)  Although the '845 patent was never formally asserted in the Com21 litigation, it is included in Judge Whyte's final order because Hybrid Networks threatened to assert it.  (Ex. D, 1/15/99 Stipulation and Order of Dismissal, ¶¶ 2 and 4.)  Thus, three of the four patents involved in this action were previously before Judge Whyte.  The fourth, U.S. Patent No. 6,104,727 ("the '727 patent"), issued after Judge Whyte's order and the dismissal of the Com21 litigation.  The '727 patent is a continuation of a division of the '121 patent and shares the same disclosure with both the '121 and '845 patents.  (Complaint, Docket No. 1, pg. 33 of Exhibit D.)

[2] Prior to founding Com21, Mr. Baran founded PacketCable Inc. (subsequently known as Packet Technologies, Inc. and eventually acquired by Cisco) and created "a new digital control and communications system intended to support high speed, interactive broad band computer communications on both present and future cable systems."  (Ex. F, PacketCable: A New Interactive Cable System Technology, pg. 1.)   His work with Maarten R. Pranger, another resident of the Northern District of California, predates the Patents-in-suit by nearly a decade and his testimony regarding its details may be important to a just adjudication on this case.  (Ex. G, U.S. Patent No. 4,509.073, pg. 1.)

3.      Hybrid . . . [and] Com21 . . . have entered into a Confidential Settlement Agreement and a License Agreement for the purpose of settling this action.

\*   \*   \*

5.      Com21 . . . will not voluntarily assist in challenging the validity or enforceability of Hybrid's Patents, as defined in the Confidential Settlement Agreement.

6.      The Court shall retain jurisdiction for purposes of enforcing this Dismissal, the Settlement and License Agreement, and each other terms.

(Ex. D, Stipulation and Order of Dismissal, ¶ 3.)  Judge Whyte retained jurisdiction to adjudicate all disputes arising from his order, including presumably disputes about whether and to what degree Mr. Baran and other former Com21 employees remain free to cooperate in this case, to say nothing of travel to this district and testify at trial.  In addition, Judge Whyte's order appears to contemplate that his Court -- not the Bankruptcy Court -- will have ultimate say over the terms of the license that are disputed in Arris' Adversary Complaint.

Consequently, at least the following non-party witnesses are affected by Judge Whyte's Order and retained jurisdiction in the Northern District of California:

**Mr. Paul Baran:**   Former Chairman of the Board of Com21, who is reasonably believed to be knowledgeable about known prior art systems and the activities of Com21 in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit.  Mr. Baran is turning eighty years old;

**Mr. Mark Laubach:**   Former Vice President and Chief Technology Officer of Com21, who is reasonably believed to be knowledgeable about known prior art systems and the activities of Com21 in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit;

- 6 -

**Mr. Dave Robertson**:  Former Chief Financial Officer of Com21, who is reasonably believed to be knowledgeable about efforts by Hybrid Network to assign a value to a license under the patents-in-suit; and

**Other Unknown Com21 Employees**:  Other former employees of Com21 who are unknown at this time, but whom discovery is likely to reveal are knowledgeable about one or more disputed facts about prior art systems and the activities of Com21 in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit.

### D.   HYBRID NETWORKS GAVE COM21 THE RIGHT TO BUY THE PATENTS.

Arris describes the Com21 license in its Adversary Complaint. (Ex. B, ¶ 13b).  The license provides in pertinent part:

Before any of Hybrid's Patents…may be sold, assigned or title thereof transferred to a third party… (including sales, assignments and transfers as a result of bankruptcy or insolvency), either independently or a part of a sale of Hybrid's other assets, such patent or patents shall first be offered to Com21 at the price that  the Prospective Acquirer has agreed to pay Hybrid Therefore.

It is this right that Arris, as the successor in interest to Com21, seeks to enforce in its Adversary Complaint in San Jose, California.  (Ex. B, ¶ 18)  At the same time. Judge Whyte has retained jurisdiction over the License terms in his Order.  (Ex. D, ¶ 6).

### E.   THE INVENTORS OF THE PATENTS-IN-SUIT

The last known address for each of the inventors listed on the Patents-in-suit is in the Northern District of California.  (Complaint, Docket No. 1, pg. 1 of Exhibits A-D.)  Consequently, at least the following non-party witnesses are affected by the foregoing contacts with the Northern District of California:

**Mr. Eduardo J. Moura**:  Named inventor on all four Patents-in-suit, who is reasonably believed to be knowledgeable about

the conception and reduction to practice of the inventions allegedly disclosed in the '121 patent, the '774 patent, the '845 patent, and the '727 patent.

**Ms. Jan M. Gronski**:  Named inventor on the '121 patent, the '845 patent, and the '727 patent, who is reasonably believed to be knowledgeable about the conception and reduction to practice of the inventions allegedly disclosed in the '121 patent, the '845 patent, and the '727 patent.

**Mr. James C. Long**:  Named inventor on the '774 patent, who is reasonably believed to be knowledgeable about the conception and reduction to practice of the inventions allegedly disclosed in the '774 patent.

**Mr. Robert L. Packer**:  Named inventor on the '727 patent, who is reasonably believed to be knowledgeable about the conception and reduction to practice of the inventions allegedly disclosed in the '727 patent.

**Mr. Robert A. Luxenberg**:  Named inventor on the '727 patent, who is reasonably believed to be knowledgeable about the conception and reduction to practice of the inventions allegedly disclosed in the '727 patent.

**Mr. Frederick Enns**:  Named inventor on the '727 patent, who is reasonably believed to be knowledgeable about the conception and reduction to practice of the inventions allegedly disclosed in the '727 patent.

F.    **PRIOR INVENTION AND OFFERS FOR SALE:  THE HYBRID NET-WORKS AND IBM WITNESSES**

In 1990, Hybrid Networks offered to construct a high-speed data network connecting

IBM's Almaden Research Center in San Jose, California to remote computer terminals located in

IBM employee homes in and around San Jose.  (Ex. H, June 5, 1990 Letter from Hybrid Net-

works to IBM, pg. 3.)  Both of the parties, and all of the potential witnesses relating to this issue

were, and likely still are, located within the Northern District of California.  One such witness,

John Powers, actually opposed the reissue application that resulted in the '774 patent by declar-

ing that he was a prior inventor of the claimed invention, and that a detailed description of his

invention was contained in the IBM RFQ to which Hybrid had responded with an offer for sale. As such, his testimony may well establish one of Charter's invalidity defenses.

Former executives and employees at Hybrid Networks likely still reside in the Northern District of California and have information concerning the licensing of the Patents-in-suit. Frederick Enns, Hybrid's chief technology officer, reportedly offered to license the Patents-in-suit at "reasonable terms and conditions in the industry."  (Ex. I, Hybrid Networks Inc. Awarded New Cable and Wireless Modem System Patent, pg. 2.)  And Hybrid's former chief executive, Carl Ledbetter, said that Hybrid was willing to provide its patents to modem developers "for a very low fee."  (Ex. J, Exec defends Hybrid Net's patent-protection moves, pg. 1.)  Such testimony is relevant to the determination of a reasonable royalty.

Consequently, at least the following non-party witnesses are affected by the foregoing contacts with the Northern District of California:

> **Mr. John Powers**:  Senior programmer at IBM's Almaden Research Center, who is reasonably believed to be knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit;

> **Mr. T. Sappington**:  Employee at IBM's Almaden Research Center, who is reasonably believed to be knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit;

> **Mr. Carl Ledbetter**:  Former Chief Executive Officer of Hybrid Networks, who is reasonably believed to be knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit;

**Mr. Frederick Enns:**  Former Chief Technology Officer of Hybrid Networks, who is reasonably believed to be knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit; and

**Other Unknown IBM Employees**:  Other former employees of IBM's Almaden Research Center who are unknown at this time, but whom discovery is likely to reveal are knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit;

**Other Unknown Hybrid Networks Employees**:  Other former employees of Hybrid Networks who are unknown at this time, but whom discovery is likely to reveal are knowledgeable about one or more disputed facts about prior art systems and the activities of Hybrid Networks in making and selling high-speed cable modems for use in transmitting packetized data, as well as efforts by Hybrid Networks to assign a value to a license under the patents-in-suit.

## G.   NON-PARTY CHARTER VENDORS

Non-party vendors that provide Charter with the cable modems and head-end equipment used in providing high-speed internet services are also located in the Northern District of California.  Nearly 50% of Charter's cable modems and more than 80% of Charter's head-end equipment comes from companies in the Northern District of California.  (Ex. A, ¶ 4)

Consequently, at least the following non-party witnesses are affected by the foregoing contacts with the Northern District of California:

**Cisco Systems, Inc.**:  Non-party vendor who supplies approximately 83% of Charter's head-end equipment and approximately 4% of Charter's cable modems through its Linksys division.  Cisco is reasonably believed to be knowledgeable about the structure and function of this equipment.

> **Ambit Microsystems Inc.:**  Non-party vendor, who supplies approximately 38% of Charter's cable modems and is reasonably believed to be knowledgeable about the structure and function of this equipment.

> **Terayon Communication Systems, Inc.:**  Non-party vendor, who supplies approximately 5% of Charter's cable modems and is reasonably believed to be knowledgeable about the structure and function of this equipment.

## ARGUMENT

**1.    Non-Joinder**

Rule 19(b) provides that the Court should dismiss an action where a party regarded as "indispensable" can not be added.   To determine whether a party is "indispensable," the Rule directs the Court to consider:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

> Second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

> Third, whether a judgment rendered in the person's absence will be adequate;

> Fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

As discussed below, each of these factors weights in favor of dismissal.

(1)    <u>Prejudice</u>.  The potential for prejudice to Charter is palpable.  If this case proceeds, and the California court later determines that Hybrid Patents is not the owner of the patents-in-suit, then an inconsistent judgment is possible.  But even if the judgments are consistent, the duplicative litigation in Texas will have been a great waste of parties' as well as the court's time and resources.

(2)    <u>Protective Measures</u>.  There is only one protective measure apparent to Charter that would lessen or avoid the prejudice of inconsistent judgments.  That is, the Court should

abate this case until after the California litigation has been concluded.  Charter proposes such an

abatement – as alternative relief.  See *infra* at 18.

(3)     <u>Adequate Judgment</u>.  In the absence of all of the putative owners of the patents-

in-suit, it is foreseeable that the Court cannot render an adequate judgment in any one of a num-

ber of scenarios.  For example, if the court or the jury concludes that Charter does not infringe

the patents-in-suit, the Court's judgment will not be final and complete in the event it is later de-

termined by the California Court that another party owns the patents.  Similarly, if the jury or the

court determines that the patents are invalid, then the judgment will be incomplete if it does not

bind the true owner of the patents.  Similarly, if the court sustains any one of Charter's equitable

defenses, then the judgment will not be final and complete to the extent it does not bind an owner

of the patents.

(4)     <u>Adequate Remedy</u>.  Hybrid Patents has an adequate remedy if this case is dis-

missed for non-joinder.  It can bring its claims in the bankruptcy court in San Jose.  Alterna-

tively, Hybrid Patents can bring its claims before Judge Whyte in the Federal District Court in

San Jose inasmuch as Judge Whyte has retained continuing jurisdiction over the issues relating to

the Com21 license, including issues relating to ownership of the patents.

The reverse is not true.  Because of the pending bankruptcy, Hybrid Patents cannot bring

Com21 (the company from which Arris allegedly acquired its rights) or Arris into this case in the

Eastern District of Texas.[3]

## 2.      **Transfer - First Filed Rule**

---

[3] 28 U.S.C. §1334(e)(1) ("the district court in which a case under Title II [i.e., a bankruptcy
case] is commenced or pending shall have exclusive jurisdiction of all of the property, wherever
located, if the debtor as of the commencement of such case, and of property of the [bankruptcy]
estate").

If this Court does not dismiss this case for non-joinder, then it should transfer the case to Judge Whyte in the Northern District of California under the first filed rule.  Judge Whyte has retained jurisdiction over many of the issues that will be litigated, including the key issue concerning who is the rightful owner of the patents-in-suit.  Under the precedent of this Court, Judge Whyte's case takes priority over this case.  *O2 Micro International Limited v. Monolithic Power Systems, Inc.*, No. 2:04:CV-359 (E.D. Tex. 2006) (copy attached as Exhibit K) is instructive. There, the Court transferred a patent infringement case to the Northern District of California because of prior litigation in that district between the same parties on other patents in the same family of patents, that is, patents that claimed common priority.

Here, while the patentee may have changed,[4] the patents are identical.  And, importantly, Judge Whyte retained jurisdiction –with the agreement of Hybrid Networks – over issues including\ patent ownership under the Com21 license.  Those issues will be key to Charter's defense and should be litigated before Judge Whyte as the Court first vested with jurisdiction over these patents and the Com21 license.

### 3.  Transfer - Convenience

Section 1404(a) of Title 28 of the United States Code provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any Civil action to any other district or division where it might have been brought.

28 U.S.C. §1404(a).  The purpose of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense and avoid wasted time, energy, and money.  *Zoltar Satellite Sys., Inc. v. LG Elec. Mobile Comm., Co.*, 402 F. Supp.2d 731, 734 (E.D.

---

[4] In the open and friendly discussions between counsel in this case, counsel for Hybrid Patents has not denied that there is a relationship between Hybrid Networks and Hybrid Patents.  We do not want to put words in Counsel's mouth, but until it is demonstrated to the contrary, Charter has regarded Hybrid Patents to be a related company to Hybrid Networks.

Tex. 2005.)  (transferring patent infringement litigation to the Northern District of California);
*Purdy v. Munden*, 356 F. Supp.2d 658, 659 (E.D. Tex. 2005) (granting motion to transfer); *Shoe-make v. Union Pac. R..R. Co.*, 233 F. Supp.2d 828, 829 (E.D. Tex. 2002) (granting motion to transfer).  The decision to grant or deny a motion to transfer is left to the sound discretion of the district court. *Id*.

Here, this action "might have been brought" in the Northern District of California, and, had it been, the convenience of numerous non-party witnesses, and the interests of justice, would have been better served.  Consequently, this Court can and should transfer this action to the Northern District of California

### A.    This Action Might Have Been Brought In The Northern District Of California.

A threshold question in any motion under 28 U.S.C. § 1404(a) is whether the action might have been brought in the transferee district.  *Zoltar*, 402 F. Supp.2d at 735; *Purdy*, 356 F. Supp.2d at 659.  Here, the answer is undisputed.  Charter provides high-speed internet access to subscribers living in the Northern District of California, delivers those services from head-end facilities located in that district, and thus is subject to personal jurisdiction in that district.  Consequently, this action could have been brought in the Northern District of California.

### B.    The Convenience Of The Parties And Witnesses, And The Interest Of Justice, Would Be Served By Transferring This Case To The Northern District Of California.

Courts consider a number of private and public factors in adjudicating transfer requests, including:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive; (5) the adminis-trative difficulties flowing from court congestion; (6) the local interest in having local issues de-

cided at home; (7) the forum's familiarity with the governing law; and (8) the avoidance of un-

necessary conflict of law problems involving foreign law's application.  *Zoltar*, 402 F. Supp.2d at

735.  Although no one factor is dispositive, *id.*, the convenience of non-party witnesses has been

held to be especially important.  *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp.2d 786,

790-91 (S.D. Tex. 2005) (granting motion to transfer in trademark infringement case, and stating

"[t]he relative convenience to the witnesses is often recognized as the *most important factor* un-

der § 1404(a)," and "the convenience of non-party witnesses, rather than that of party witnesses .

. . is the *more important* factor and is accorded *greater weight* in a transfer of venue analysis")

(emphasis added); *Shoemake*, 233 F. Supp.2d at 832 ("the convenience of nonparty witnesses is

accorded *greater weight* than that of party witnesses") (emphasis added).

Where, as here, the plaintiff does not reside in the transferor district, the plaintiff's forum

choice is given little, if any, weight.  *Shoemake*, 233 F. Supp.2d at 830-31 (transferring case, and

stating "the plaintiff's choice of forum will be given close scrutiny where, as here, the plaintiff

does not live within the Division of the Court") (quoting *Dearing v. Sigma Chem. Co.*, 1 F.

Supp.2d 660, 665 (S.D. Tex. 1998))  Of course, the location of plaintiff's trial counsel is not only

irrelevant, but improper even to consider.  *Spiegelberg*, 402 F. Supp.2d at 790 (transferring case,

and stating "the Fifth Circuit does not consider the 'location of counsel' a relevant factor in decid-

ing a § 1404(a) motion") (citing *In re Horseshoe Entm't*, 33 F.3d 429, 434 (5th Cir. 2003));

*Shoemake*, 233 F. Supp.2d at 833-34 (transferring case, and stating "[t]he Fifth Circuit recently

characterized this factor as 'irrelevant and improper for consideration in determining the question

of transfer of venue") (citing *In re Horseshoe Entm't, supra*).

Here, considering of the foregoing factors counsels strongly in favor of transferring this

action to the northern District of California.

### 1.    The Relative Ease of Access to Sources of Proof

Numerous non-party witnesses are located in the Northern District of California.  (*See*

*supra*, pp. 6 - 11.)  Although all of these witnesses could be compelled to submit to a deposition,

none would be within the subpoena power of this Court for purposes of testifying at trial.  Worse

still, even were a witness willing to travel to this district for trial, he or she may be prohibited

from doing so without appealing to Judge Whyte for clarification or modification of his order in

the *Com21* litigation.  This factor, therefore, counsels strongly in favor of transferring this action

to the Northern District of California.

### 2.    The Availability of the Compulsory Process to Secure Witnesses' Attendance

Again, numerous witnesses reside outside of the subpoena power of this Court and whose

attendance at trial cannot be secured.  (*See supra*, pp. 6 - 11.)  This factor, therefore, counsels

strongly in favor of transferring this action to the Northern District of California.

### 3.    The Willing Witnesses' Cost of Attendance

The distance between San José, California and Marshall, Texas is more than fifteen hun-

dred miles.  Coach airfare between San José and Dallas-Fort Worth is approximately $400 dol-

lars.  A time zone difference of two hours makes morning business in Texas difficult for Califor-

nia residents, thereby necessitating overnight accommodations for even short trips.  Suffice it to

say that the cost of attendance for willing witnesses is not insubstantial and is, in all events, sig-

nificantly greater than the cost of attendance in other cases where transfer was warranted.  *See,*

*e.g.*, *Spielberg, supra* (transferring action from Southern District of Texas to the Northern Dis-

trict of Texas); *Purdy, supra* (transferring action from the Eastern District of Texas, Marshall

Division, to the Northern District of Texas).

### 4.    Other Practical Problems That Make the Case's Trial Easy, Expeditious, and Inexpensive

Presenting witnesses through deposition testimony is, at least in the modern world of videography, much more difficult, time consuming, and expensive than live testimony.  Video tapes and stenographic transcripts must be synchronized and digitized.  Testimony is then designated and counter designated.  The Court is compelled to rule on numerous objections in advance of trial, many of which may well be premature and ultimately unnecessary.  Based on the Court's rulings on those objections, video excerpts may need to be modified still further.  All of these activities are time consuming and burdensome to both the parties and the Court, and are unnecessary in the case of live testimony.  This factor, therefore, also counsels in favor of transfer.

### 5.      The Administrative Difficulties Flowing From Court Congestion

The San Jose Division of the Northern District of California, in which Judge Whyte sits, is less overburdened with patent litigation than is the Marshall Division of the Eastern District of Texas.  Since January 1, 2004, 213 patent cases have been filed in Marshall, 139 of which are still pending (See Exhibit L).  In San Jose, 111 patent cases have been filed in that time, only 70 of which are still pending (See Exhibit M).  This factor counsels in favor of transfer.

### 6.      The Local Interest in Having Local Issues
###          Decided at Home

Judicial comity counsels in favor of permitting Judge Whyte to adjudicate the meaning and scope of his own order in the *Com21* litigation.  Apart from that local interest, the Northern District of California has a natural interest in adjudicating claims of ownership affecting the Internet, especially claims about what persons of ordinary skill in art would or would not know about various technologies.  This factor, too, counsels in favor of transfer.

### 7.      The Forum's Familiarity With the Governing Law

This Court is no less familiar with United States patent laws than is the Northern District of California.  But again, Judicial comity favors permitting Judge Whyte to adjudicate disputes

arising out of his own order in the *Com21* litigation.  Consequently, this factor, too, counsels slightly in favor of transfer.

> **8.     The Avoidance of Unnecessary Conflict of Law Problems Involving Foreign Law's Application.**

This action involves no conflict of laws or foreign law questions.  Consequently, this factor is neutral.

## 4.     Abatement

Finally, as alternative relief, Charter asks the Court to abate this case until such time as the California litigation has been concluded.  Such an abatement is the only protective measure apparent to Charter that will avoid the prejudice and danger of inconsistent judgments.

## CONCLUSION

For the foregoing reasons, the Court should either:  (i) dismiss this case under Rule 19(b); (ii) transfer this case to Judge Whyte in the Northern District of California; (iii); or abate the case until the California litigation has been concluded.

Respectfully submitted,


/s/ Andrew D. Raymond
_____

Otis W. Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway Suite 500
Tyler, Texas 75703
Tel:  (903) 561-1600
Fax: (903) 581-1070

Bradford P. Lyerla
Kevin D. Hogg
Jeffrey H. Dean
Gregory E. Stanton
Charles E. Juister
Andrew D. Raymond
MARSHALL GERSTEIN & BORUN, LLP
6300 Sears Tower
Chicago, Illinois 60606-6357
Tel:  (312) 474-6300
Fax: (312) 474-0448

April 28, 2006

Counsel for Defendant
CHARTER COMMUNICATIONS, INC.