IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION


| | | |
|---|---|---|
| HYBRID PATENTS, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:05-CV-436 |
| CHARTER COMMUNICATIONS, INC. ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

1.      **Introduction.**

        Charter Communications and Arris International have moved to dismiss the case for non-

joinder or, in the alternative to transfer or abate (##21, 32).  The court has considered the motions,

responses and the applicable law.  In addition, the court has considered the decision of the United

States Bankruptcy Court for the Northern District of California, rendered December 14, 2006.  The

court is persuaded that the motions should be denied for the reasons expressed herein.

2.      **Background and Procedural Posture.**

        The historical facts relevant to the motions are complex.  Hybrid Networks, Inc. ("HNI") was

the original assignee of the patents-in-suit.  In 1997, HNI granted London Pacific Life & Annuity

Company ("LPL") a security interest in all of HNI's assets, including the patents-in-suit, as part of

a $5 million loan transaction.  LPL perfected its security interest.

        In 1999, HNI sued an entity known as Com21, Inc. ("Com21") for patent infringement in the

Eastern District of Virginia.  The case was transferred to the Northern District of California.  Judge

Ronald M. Whyte presided over the case.  HNI and Com21 eventually settled the case, and Com21

acquired a license to the patents.  The terms of the license agreement gave Com21 a right of first refusal to purchase the patents-in-suit from HNI.  In the Stipulation and Order of Dismissal, Judge Whyte expressly retained jurisdiction over the settlement and the license agreement.[1]

In May 2002, HNI defaulted on its loan obligations to LPL.  LPL exercised its rights under the security agreement and took possession of HNI's patents.  LPL immediately transferred the patents to HYBR Wireless Industries, Ltd. ("HYBRW").  HWBRW then transferred the patents to Hybrid Patents Inc. ("Hybrid"), the plaintiff in this case.

On July 15, 2003, Com21 filed a Chapter 11 Petition in the United States Bankruptcy Court for the Northern District of California.  At the time it filed its petition, Com21 had already negotiated a sale of substantially all of its assets to Arris International, Inc ("Arris").  A written asset purchase agreement between Com21 and Arris listed several patents, patent applications, and other proprietary rights being sold to Arris.  Com21, however, did not disclose the existence of any rights or licenses to the patents addressed in the license agreement with HNI.  On August 12, 2003, the bankruptcy court issued an order approving the sale.  That court retained exclusive jurisdiction to resolve disputes arising under or related to the sales agreement.

In September 2005, Hybrid brought the present case for patent infringement against Charter.  Hybrid alleges it is the owner of the patents-in-suit.  On March 31, 2006, Arris filed an adversary proceeding in the Com21 bankruptcy case.  Arris alleges that it, rather than Hybrid, is the true owner of the patents-in-suit.  Arris contends that the foreclosure sale instituted by LPL was ineffective to

---

[1]    Judge Whyte's order precluded Com21 from voluntarily assisting defendants in other litigation with challenging the validity of the patents.  He has since clarified that his order does not preclude individuals who formerly worked for Com21 from assisting Charter and/or Hybrid in this litigation.

transfer title to the patents from HNI to LPL and that Arris acquired (or has the right to acquire) the rights to the patents through Com21's license agreement with HNI.  Arris joined Hybrid, HNI, HYBRW, LPL, and the trustee of the Estate of Com21 as defendants to the adversary proceeding.

At the scheduling conference in this case, the parties advised the court of the Arris adversary proceeding.  Thereafter, based on the adversary proceeding, Charter filed the present motion to dismiss, transfer, or abate this case (#21).  In the motion, Charter contends that all of the parties necessary to adjudicate the present dispute are not joined in the case.  Alternatively, Charter contends that the court should transfer this suit to either the bankruptcy court or to Judge Whyte's court under first-filed principles.  In the further alternative, Charter contends that the court should transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Charter also filed a third-party claim against Arris and several other entities alleged to have sold Charter products accused of infringement.  Arris answered the third party complaint and has also moved to dismiss, transfer, or abate the case, adopting Charter's position.

In the California adversary proceeding, the defendants (essentially the Hybrid entities and LPL) moved to dismiss, transfer, or stay the proceedings on the grounds that this court was the first filed court.  The defendants in the present case asked this court to defer ruling on their motions pending the bankruptcy court's consideration of the issues.  On December 14, 2005, the bankruptcy court agreed that this court was the first-filed court and stayed the adversary proceeding.  The bankruptcy court noted that this court should have the first opportunity to decide the ownership issues, and that this could help streamline the issues for the bankruptcy court.  That court observed that this court might agree with Hybrid that the LPL foreclosure sale extinguished Com21's rights under the license agreement.  If that occurred, LPL could convey good title to HYBRW, which, in

3

turn, could convey good title to Hybrid.  In that scenario, Com 21 would not have owned any interest in the patents when it filed its Chapter 11 Petition, and no further action by the bankruptcy court would be needed.  Alternatively, the bankruptcy court suggested that this court could decide that Com21's right of first refusal prevented LPL from acquiring good title to the patents.  In that scenario, there would also be little need for bankruptcy court involvement (presumably because this court would simply dismiss the present case for lack of standing).  The bankruptcy court suggested that a need for its participation in the ownership issue would arise only if this court determined that Hybrid obtained the patents through the foreclosure sale but took them subject to Com21's right of first refusal.  In that event, the bankruptcy court would need to resolve the issues related to the asset purchase agreement and the effect of the bankruptcy sale of assets by Com21 to Arris.

After the bankruptcy court issued its order, both parties filed statements concerning the effect of the decision.  The court has considered fully those statements.  The court is ultimately persuaded that the motions to dismiss, transfer, or abate are not well-taken and should be denied.

3.    **Discussion.**

A.    **Motion to Dismiss for Non-Joinder.**

First, Charter moves to dismiss the case for non-joinder of indispensable parties.  The court rejects this position.  The only parties claiming ownership to the patents-in-suit are Hybrid and Arris.  Thus, there is no risk of inconsistent adjudications because both are now parties to this case.  From Charter's perspective, if the court determines that Hybrid is not the owner of the patents, then that ruling would bind all of the parties to this case–Hybrid, Arris and Charter.  Likewise, if this court determines that Hybrid is the true owner and has standing to sue, then Arris, as a party to the case, would also be bound by that determination.  Finally, if this court determines facts which necessitate

4

involvement of the bankruptcy court, then both Arris and Hybrid would be bound by this court's determination of the issues, as well as by the bankruptcy court's decision because they are both parties to that case as well.  The motion to dismiss for non-joinder is denied.

**B.      Motion to abate or transfer pursuant to first-filed principles.**

Charter and Arris also contend that this court should allow the bankruptcy court to determine the ownership issues.  As such, they ask this court to stay or transfer this case to the bankruptcy court.  Alternatively, they argue that Judge Whyte's court is the first-filed court.  As a result, they contend this court should stay this case, or transfer it to Judge Whyte due to his involvement in the HNI/Com21 case and his familiarity with the technology.

The first argument is resolved by the bankruptcy court's decision.  That court held that this court should proceed first with the case as this court is the first-filed court.  This court was in fact the first-filed court and, for essentially the same reasons outlined by the bankruptcy court, will exercise primary jurisdiction over this case, including the ownership issues.

The court also rejects the second argument–at least for now.  The court observes that neither party to Judge Whyte's case or the order disposing of it is involved in this case.  Moreover, Charter does not contend it has any right to enforce the license agreement between HNI and Com21 as a party to the agreement.  For its part, Arris's right to enforce the license agreement and the right of first refusal appears to depend in part on the effect of the LPL foreclosure sale, if not other issues.  At this point, the record will not allow the court to determine the effect, if any, of the settlement and license agreement on issues relating to LPL's assumption of the patents and the subsequent assignment to HYBRW and Hybrid Patents.  As a result, the extent of any overlapping issues is ambiguous.  The court will therefore deny without prejudice the motion to transfer this case to Judge

Whyte.  In doing so, however, this court makes plain to all parties that if Judge Whyte believes the issues of ownership raised in this case implicate his retained jurisdiction over the case involving HNI and Com21, then this court would be inclined to stay or transfer this case to Judge Whyte for his primary consideration of any issues he finds to be within his retained jurisdiction.  Should Arris believe it has a right to enforcement of the settlement and license agreement, Arris shall file appropriate papers in Judge Whyte's court within thirty (30) days from the date of this opinion.

### C.    Section 1404(a) analysis.

Finally, Charter and Arris contend the case should be transferred pursuant to 28 U.S.C. § 1404(a).  "For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  It is within the district court's discretion whether to transfer venue under section 1404(a).  *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).  When considering whether to transfer venue, the district court "must exercise its discretion in light of the particular circumstances of the case."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E. D. Tex. 1999) (stating that district courts have the discretion to decide whether to transfer venue according to "individualized, case-by-case consideration of convenience and fairness").

When presented with a motion to transfer venue pursuant to § 1404(a), the court balances the private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The private factors are: (1) the plaintiffs' choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof;

and (6) the possibility of delay and prejudice if transfer is granted.  *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000).  The public interest factors involve: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws.  *Id.*

> ### 1.    Private Factors.

> #### a.    *Plaintiff's Choice of Forum*

The plaintiff's choice of forum is neither controlling nor determinative, but is a factor to be considered.  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).  The plaintiff's choice of forum, however, will not be disturbed unless it is clearly outweighed by other factors.  *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002).  The plaintiff chose to bring its suit in the Eastern District of Texas, Marshall Division.  The court will respect that choice if the factors do not strongly support the view that a transfer of venue is proper.

> #### b.    *The Convenience of the Parties and the Witnesses*

The court will now assess the convenience of the parties.  The convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses.  *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002).  In this case, Hybrid is a Texas corporation with its principal place of business in Fort Worth, Texas.  Charter is a Delaware corporation with its principal place of business in St. Louis, Missouri.  Arris is a Delaware corporation with its principal place of business in Suwanee, Georgia.  The parties to the case are located across the country.  Someone will be inconvenienced regardless of whether the case is litigated in this court or in California.

The court now turns to the convenience of the witnesses.  Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer.  *Mohamed,* 90 F. Supp. 2d at 774.  Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses.  *Shoemake*, 233 F. Supp. 2d at 832.  The moving party must "specifically identify key witnesses and outline the substance of their testimony."  *Mohamed*, 90 F. Supp. 2d at 775 (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

In its moving papers, Charter identified several potential witnesses who reside (or are believed to reside) in the Northern District of California.  These include all of the inventors, witnesses affiliated with Com21, real world prior art witnesses, former executives and employees of HNI, and third party equipment vendors who sell to Charter.

On the other hand, Hybrid submits that other third party witnesses, such as a former officer of LPL and a former CEO of HNI, reside in locations other than in the Northern District of California.  As the court is mindful that many patent infringement cases are driven by expert testimony, *Source, Inc. v. Rewards Network, Inc.*, 2005 WL 2367562, *2 (E.D. Tex. Sept. 27, 2005), the court cannot say that the location of third-party witnesses overwhelmingly supports a transfer to the Northern District of California.  In the court's view, however, this factor, as well as the perceived cost savings associated with a trial in the Northern District of California, nevertheless weigh in favor of a transfer to that district.

c.      *The Place of the Alleged Wrong*

Alleged acts of infringement occurred in this district.  Accordingly, this factor weighs against transfer.

8

> d.   *The Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process*

As suggested above, this factor does weigh in favor of a transfer to the Northern District of California.

> e.   *The Availability and Location of Sources of Proof*

Documentary proof is located in various areas of the country.  Although a substantial portion of it might be located in the Northern District of California, the increasing ease of storage and transportation, however, makes this factor less significant.  *See Tinkers & Chance v. Leapfrog Enterprises, Inc.*, 2006 WL 462601, *5-6 (E.D. Tex. Feb. 23, 2006).  Documents can easily be transported to Texas or to California.  This factor is neutral as to transfer.

> f.   *The Possibility of Delay and Prejudice if Transfer is Granted*

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence."  *Shoemake*, 233 F. Supp. 2d at 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002)).  This is not a rare and exceptional case; therefore, this factor is neutral.

> **2.   Public Interest Factors.**

> a.   *The Administrative Difficulties Caused by Court Congestion*

The court is persuaded that this factor is neutral as to transfer.

> b.   *The Local Interest in Adjudicating Local Disputes and the Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty*

Charter supplies service throughout the United States, including in the Eastern District of Texas.  The admitted sale of allegedly infringing products in the Eastern District of Texas is an event that is significant and relevant to the citizens of this district.  *See Cummins-Allison Corp. v. Glory*

9

*Ltd.*, 2004 WL 1635534, *5 (E.D. Tex. May 26, 2004).   Hybrid, moreover, is a Texas corporation.

Accordingly, this factor weighs against transfer.

c.       *The Avoidance of Unnecessary Problems in Conflict of Laws*

Patent claims are governed by federal law.  This court and the court in the Northern District

of California are both capable of applying patent law to infringement claims.  Therefore, this factor

is neutral as to transfer.

**3.       Conclusion–Section 1404(a) issues.**

Although the convenience of the witnesses supports a transfer of venue, most of the

remaining factors are neutral and do not weigh in favor of transfer.  Charter and Arris have failed

to demonstrate that a venue transfer is proper.

**4.       Conclusion.**

For the reasons expressed in this opinion, the court denies Charter's motion to dismiss,

transfer or abate (#21).  The court also denies Arris's motion adopting Charter's arguments (#32).

The court denies as moot the motion to dismiss Arris's counterclaim asserted against Charter (#36).

Finally, because the issues presented in Arris's motions to dismiss, stay, or transfer Hybrid's

infringement case against Arris (#44, 46) are substantially the same as those raised in the motions

discussed in this opinion, the court denies those motions as well for the reasons assigned herein.

SIGNED this 28th day of March, 2007.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

10
